# No. 14-2121

IN THE

## United States Court of Appeals
## for the First Circuit



JOSEPH ANGIUONI,

*Plaintiff-Appellant,*

-V-

TOWN OF BILLERICA; DANIEL ROSA, individually
and in his official capacity as Chief of Police,

*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court for the
District of Massachusetts, District Court No. 1:11-cv-11661-NMG

## Appellant's Brief and Addendum

JOHN V. SISKOPOULOS
BAR NO. 1171443
  COUNSEL OF RECORD
SISKOPOULOS LAW FIRM, LLP
198 TREMONT STREET, # 320
BOSTON, MA 02116
(617) 959-1628

ALEXANDRA C. SISKOPOULOS
BAR NO. 1171444
SISKOPOULOS LAW FIRM, LLP
33 WEST 19TH STREET, 4TH FLOOR
NEW YORK, NY 10011
(646) 942-1798

*COUNSEL FOR PLAINTIFF-APPELLANT*

SUPREME COURT PRESS ♦ (888) 958-5705 ♦ BOSTON, MASSACHUSETTS



# No. 14-2121
# *Angiuoni v. Town of Billerica et al.*
# Table of Contents

*Page*

TABLE OF AUTHORITIES ............................................................... iii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ..................... vi

JURISDICIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ............................................................... 1

STATEMENT OF THE CASE ........................................................... 2

SUMMARY OF THE ARGUMENT ..................................................... 14

ARGUMENT ............................................................................... 16

    I.    The Trial Court, As A Matter of Law, Should Have Allowed
          Appellant Angiuoni To Introduce Crucial Rebuttal Evidence
          That Would Have Counteracted And/Or Disproven The
          Defendants' Theory That Mr. Angiuoni Is Not Competent
          With A Rifle ................................................................... 16

    II.   The Trial Court Failed To Sequester Fact Witnesses Presented
          By The Defendants Pursuant To Fed. R. Evid. 615 Requiring
          A Reversal By This Honorable Court ................................... 21

    III.  The Trial Court Impermissibly Allowed The Defendants To
          Mention The Number Of Veterans Employed By The Billerica
          Police Department.  This Evidence Had Little Or No Probative
          Value, Was Highly Prejudicial, And Was Confusing To The
          Jury.  The Defendants' Innumerable References To Veterans
          On The Police Force Clearly Prevented Mr. Angiuoni From
          Receiving A Fair Trial....................................................... 24

*Page*

CONCLUSION ............................................................... 27

CERTIFICATE OF COMPLIANCE ............................................ 29

CERTIFICATE OF SERVICE ............................................... 30

# Addendum Table of Contents

Judgment in a Civil Case (September 26, 2014) ............................................. ADD-1

Rulings on Motions in Limine, Final Pre-Trial Conference
   (May 21, 2014) ............................................ ADD-2

Colloquy on Witness Sequestration (September 15, 2014) ............................ ADD-5

Bench Ruling Sustaining Objection to Admission of Plaintiff's Exhibit
   (September 17, 2014) ............................................ ADD-7

# Table of Authorities

**Cases**

*Allen v. Dairy Farmers of America*,
  No. 5:09-CV-230, 2013 WL 211303 (D. Vt. Jan. 18, 2013)………………20

*Andazola v. Logan's Roadhouse, Inc.*,
  No. CV-10-S-316-NW, 2013 WL 2355350 (N.D. Ala. May 24, 2013)…....26

*Flowers v. Green*,
  420 Pa. 481, 218 A.2d 219 (1966)………………………………..……20, 21

*Geders v. United States*,
  425 U.S. 80 (1976)……………………………………………………………22

*Haskell v. Kaman Corp.*,
  743 F.2d 113 (2d Cir. 1984)…………………………………………………26

*Johnson v. Interstate Brands Corp.*,
  351 Fed.Appx. 36 (6th Cir. 2009)……………………………….…………26

*Kozlowski v. Hampton School Bd.*,
  77 Fed.Appx. 133 (4th Cir. 2003)………………………………..…………23

*Opus 3 Limited v. Heritage Park, Inc.*,
  91 F.3d 625 (4th Cir. 1996)………………………………………..………21, 23

*Sorenson v. City of Aurora*,
  984 F.2d 349 (10th Cir. 1993)…………………………………...……………26

*Teller v. Schepens*,
  25 Mass. App. Ct. 346, 518 N.E.2d 868 (1988)……………………16, 19, 20

*Urban Inv. and Development Co. v. Turner Const. Co.*,
  35 Mass. App. Ct. 100, 616 N.E.2d 829 (1993)………………………..16, 19

**_Page_**

*U.S. v. Ballou,*
   59 F. Supp. 3d 1038 (D.N.M. 2014)………………………….………26

*U.S. v. Burgess,*
   691 F.2d 1146 (4th Cir. 1982)…………………………………………23

*U.S. v. Caraway,*
   534 F.3d 1290 (10th Cir. 2008)…………………………………………..27

*U.S. v. Chrzanowski,*
   502 F.2d 573 (3d Cir. 1974)……………………………………...…20

*U.S. v. Ell,*
   718 F.2d 291 (9th Cir. 1983)………………………………………22, 24

*U.S. v. Farnham,*
   791 F.2d 331(4th Cir. 1986)…………………………………......23

*U.S. v. Jackson,*
   60 F.3d 128 (2d Cir. 1995)…………………………………………...22

*U.S. v. Laboy,*
   909 F.2d 581 (1st Cir. 1990)……………………………………………20

*U.S. v. Magana,*
   127 F.3d 1 (1st Cir. 1997)…………………………………………21, 23

*U.S. v. Mangual-Santiago,*
   562 F.3d 411 (1st Cir. 2009)……………………………………………..24

*U.S. v. Warren,*
   550 F.2d 219 (5th Cir. 1977)………………………………..…………23

**Statutes**

***Page***

28 U.S.C. §1291…………………………………………………………....1

28 U.S.C. §1331………………………………………………...…..1

38 U.S.C. §4311………………………………………...……..2

38 U.S.C. §4323(b)(3)…………………………..…………………1

**Judicial Rules**

Fed. R. Evid. 401…………………………………………………….21

Fed. R. Evid. 403…………………………………………….…24, 26

Fed. R. Evid. 615………………………………...….1, 14, 15, 21, 22, 23, 24

**Other Authorities**

Wigmore on Evidence (2d) Ed., Vol 4, p. 20, s 1873………………………..…20

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

Pursuant to L.R. 34.0, Plaintiff-Appellant Joseph Angiuoni requests oral argument. Given the complexity of the factual record and to refine the issues raised on appeal, Appellant Angiuoni believes oral argument will assist this Honorable Court in reviewing this specific appeal.

## JURISDICIONAL STATEMENT

This is an appeal from a final judgment of the United States District Court (Gorton, J.) entered on September 26, 2014 in favor of the Defendants-Appellees Town of Billerica and Daniel Rosa, individually and in his official capacity as Chief of Police ("Defendants"). (Addendum ("Add.") Add. 1). The District Court has jurisdiction under 28 U.S.C. §1331 as conferred through the specific provisions of 38 U.S.C. §4323(b)(3). The Plaintiff-Appellant Joseph Angiuoni ("Appellant Angiuoni," "Joe Angiuoni" or "Mr. Angiuoni") timely filed his notice of appeal on October 24, 2014. (A. 252-53). This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1.    Whether the trial court's refusal to allow rebuttal evidence with regard to the subsequent rifle range test constituted reversible error wherein Appellant Angiuoni had an undeniable right to counteract or disprove crucial evidence submitted by the Defendants that Appellant Angiuoni was incompetent with a rifle?

2.    Whether the trial court's failure to sequester fact witnesses was an error of law wherein a trial court has an absolute duty to sequester witnesses pursuant to Fed. R. Evid. 615?

3.     Whether Defendants' references to the number of veterans on the Billerica Police Force should have been excluded at trial wherein it was irrelevant evidence and/or this was highly inflammatory evidence against Appellant Angiuoni that was clearly prejudicial and confused the jury as to the actual claim before them?

## STATEMENT OF THE CASE

Appellant Angiuoni commenced an action in the United States District Court for the District of Massachusetts against the Defendants – Town of Billerica and Daniel Rosa. (Appendix ("A.") A. 1). Appellant Angiuoni alleged that his federal rights were violated under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §4311, causing damages to Appellant Angiuoni. (A. 82). This case went to trial in September 2014. (A. 15). Ultimately, a jury rendered a verdict in favor of the Defendants. (A. 16). A final judgment was entered on September 26, 2014. (Add. 1). This is an appeal from that judgment.

Mr. Angiuoni is a highly accomplished war veteran. (A. 190-93). Joe Angiuoni served in the United States Army in the early 2000s. (A. 187, 189). During his time in the United States Army, Joe Angiuoni was cited by his superior officers for his excellent work in Iraq and service to our country. (A. 190-93). Mr. Angiuoni was honorably discharged from the army after being injured during his

2

tour of duty. (A. 188-190). Mr. Angiuoni is a disabled veteran. (A. 75, ¶ 2).

Upon returning from military service, Mr. Angiuoni secured a job with the

Middlesex Sheriff's Office as a deputy sheriff and corrections officer. (A. 194).

Joe Angiuoni was considered an excellent corrections officer. (A. 195-98).

Significantly, he obtained glowing reviews from his superior officers. (A. 195-98).

Captain Matt Davis, Mr. Angiuoni's boss, stated in an evaluation that "C.O.

Angiuoni runs Pod D for me. He needs little supervision and gives us a hundred

percent." (A. 195). He also noted that Mr. Angiuoni "[a]ccepts the direction of

superiors[,] [n]ever complains [and] [h]e always gives his very best." (A. 195).

Thus, Joe Angiuoni's astounding record of service in the military continued with

his work as a corrections officer.

Sometime prior to 2009, Joe Angiuoni decided to become a police officer.

(A. 202). In preparing to become a police officer, Joe Angiuoni took the civil

service exam and scored a 97 on this particular test. (A. 198). Shortly thereafter,

he passed the physical aptitude test in preparation for becoming an officer. (A.

200). Mr. Angiuoni then enrolled in the MBTA Police Academy and graduated the

academy in a timely manner. (A. 200-01). In April 2009, Mr. Angiuoni was slated

to be a probationary officer with the Billerica Police Department. (A. 66).

Probationary police officers become tenured officers after twelve months of

service. (A. 76, ¶ 6). As a probationary officer with the Billerica Police

Department, Mr. Angiuoni was assigned to a field training officer (hereinafter "FTO"). (A. 203). The FTO assigned to Joe Angiuoni had a duty to acclimate Mr. Angiuoni with the practices and protocol of being a police officer. (A. 203-04).

Mr. Angiuoni was assigned to work under two FTO's - Officer Moran and Officer Coffey. (A. 203). Mr. Angiuoni and Officer Moran did not enjoy a particularly good relationship. (*See*, Joseph Angiuoni testimony, generally, Transcripts, Day 3, Morning and Afternoon Sessions, and Day 4). Joe Angiuoni believed that Officer Moran did not provide him with sufficient training as to the details and background of becoming a police officer. Specifically, Joe Angiuoni testified that Officer Moran never provided him with any training on how to prepare a police report. (A. 211). Officer Moran failed to explain to him how to effectuate a proper radio call with Billerica Police Department. (A. 213). Indeed, Joe Angiuoni testified that the field training packet given to the FTOs was never referred to by Officer Moran. (A. 205). Indeed, in his own testimony Officer Moran acknowledges that he never offered any written feedback to Joe Angiuoni as his FTO nor did he provide any formal observation reports to Mr. Angiuoni – despite this being his sole responsibility as an FTO. (A. 157). Indeed, Officer Moran never went over the field training guide with Joe Angiouni nor did he explain what was expected of him. (A. 157). Chief Daniel Rosa, the head of the

4

Billerica Police Department, also acknowledged that Joe Angiuoni never received any written feedback from the police department.  (A. 178).

Officer Moran not only failed to train Joe Angiuoni in becoming a police officer, but jeopardized Mr. Angiuoni's life when the two rode in a police cruiser together.  (A. 159-61).  Specifically, Officer Moran instructed Joe Angiuoni to approach a stolen car without first checking to see who was the owner of the car. (A. 159-61).  Officer Moran acknowledged that this was a grievous mistake because the owner of the car might have been a violent felon which required that greater precautions be taken.  (A. 161).  Officer Moran agreed that he could have handled this incident much better.  (A. 161).

In the summer of 2009, America was in the depths of the Great Recession and as a result, there was much talk of budget cuts to compensate for the loss of revenues that was encountered by every governmental department or agency, including the Billerica Police Department.  (A. 153-54).  This created an uneasy environment in the Billerica Police Department and Officer Moran expressed this sentiment to Joe Angiuoni.  (A. 214-16).  Officer Moran, according to Joe Angiuoni, complained that office layoffs would be more dangerous to him than to Mr. Angiuoni because Officer Moran did not have veteran status.  (A. 214-16). Specifically, Mr. Angiuoni was a disabled veteran protected by USERRA.  (A. 214).  Officer Duane Eidens corroborated that Officer Moran felt it was unfair that

5

a police officer with a veteran status would obtain preferential treatment under USERRA.  (A. 154).

Mr. Angiuoni believes the Defendants took minor incidents and distorted them into catastrophes to justify his wrongful termination under USERRA.  For instance, the Billerica Police Department made a big deal that Joe Angiuoni grazed a police cruiser against the wall of a building and considered this to be a catastrophic-like event whereas it would not even be called a fender bender where no damage had been done to the car.  (A. 179-80).  In contrast, another officer (Chief Rosa's neighbor) crashed a police cruiser into numerous civilian vehicles and Chief Rosa downplayed his neighbor's significant car crash.  (A. 183).  In yet another instance, Mr. Angiuoni had the misfortune of pulling over the niece of a Middlesex Sheriff's Office Deputy who incredulously demanded that Mr. Angiuoni speak with her mother.  (A. 228-31).  Mr. Angiuoni refused to acquiesce to this ridiculous demand. (A. 231).  Shortly thereafter, the niece of this Sheriff's Deputy filed a civilian complaint against Joe Angiuoni.  (A. 232).  Chief Rosa, without ever consulting with Joe Angiuoni, believed in the validity of this tantrum-like complaint and never provided a copy of this complaint to Mr. Angiuoni.  (A. 232-33).  In yet another instance of inappropriate treatment, Officer Moran believed that Joe Angiuoni did not show the proper discretion in wanting to arrest a bunch of teenagers who had stolen property.  (A. 241).  Officer Moran believed

that this was nothing more than a teenage prank even though the teens admitted to having stolen property and told Joe Angiuoni that the teenagers should be let go. (A. 241). Unimaginably, Officer Moran ordered Joe Angiuoni to pose for a picture with these teenage girls even though they were in possession of stolen property. (A. 72). Joe Angiuoni grudgingly relented and allowed this absurd picture to take place. (A. 72).

In late May 2009, Mr. Angiuoni was required to take gun and rifle range tests with the department. (A. 176). Mr. Angiuoni received a passing grade for his handgun test. (A. 176). Unexpectedly, Mr. Angiuoni did not pass the rifle test. (A. 175). Mr. Angiuoni believed that the rifle given to him malfunctioned. (A. 243). This is because he easily passed similar rifle range tests with a same type of rifle on previous occasions. (A. 219). Mr. Angiuoni believed the rifle malfunctioned because he missed each and every shot taken at an exceptionally short distance. (A. 238-40). The trial judge refused to allow into evidence a rifle range test that would have conclusively proven that Joe Angiuoni is an accurate shot at the rifle range. (A. 219-20). This would also have supported Mr. Angiuoni's position that the rifle had malfunctioned and that he was a skilled marksman.

Mr. Angiuoni's inability to present his rebuttal testimony that he had passed a rifle range test with flying colors allowed Defendants to consistently deride Joe

Angiuoni's rifle range skills.  This is particularly offensive and prejudicial wherein

the excluded evidence would have conclusively shown that Joe Angiuoni struck 30

targets out of 30 tries in his other rifle range test.  (A. 74).  A picture speaks a

thousand words and this excluded evidence, namely, the picture of Mr. Angiuoni's

rifle range test which shows 30 bullet holes in the dead center of the target, would

have repelled and disproven the Defendants' contention that Joe Angiuoni was

incompetent with a rifle.  (A. 74).  Defendants at trial highlighted this supposed

failure at the range, which went unrebutted, as a significant factor as to why Joe

Angiuoni was not qualified to be a police officer with the Billerica Police

Department.  Specifically, in his closing, Defendants' counsel, stated,

> Angiuoni, DNQ – remember that? You just heard a
> little about this morning – at the range.  That
> couldn't be because he wasn't taking the range
> qualification seriously, or perhaps shot poorly that
> day, oh, no, no.  It was a bad rifle. Do you have
> any question that that rifle was checked. You have
> a Bronze star winner who looked over those
> rifles….The officers used the rifles.  They were
> checked.  There was nothing wrong with them. He
> would argue he was provided with a sub-par rifle
> and no one noticed, except it wasn't true…..But
> Angiuoni blames everyone else, the instructors, the
> rifle, the sun.

(A. 247-48).

Defendants' counsel elicited testimony from Chief Rosa regarding the rifle

range test wherein Chief Rosa testified, "I had heard there were significant issues

at the range in general, but, yes, he failed on the patrol rifle." (A. 172). Chief

Rosa also reiterated, "[h]e's the only officer not only on this score sheet, but he's

the only officer that I know of in the department in that whole training cycle that

DNQ'd [did not qualify] on the rifle." (A. 175). Defendants' counsel again

revisited the rifle range failure wherein he asked,

> Q    We already went over the "DNQ," which is "did
>      not qualify"?
>
> A    That's correct.
>
> Q    And that's on the rifle?
>
> A    That's on the rifle, yes.

(A. 176).

Defendants' counsel, well aware that Mr. Angiuoni's rebuttal testimony

would not be allowed into evidence, ridiculed Mr. Angiuoni's rifle shooting

abilities in his cross-examination of Appellant Angiuoni wherein he asked the

following: "And – by the way, you're the only one who DNQ'd that day,

correct?...Who else – in your testimony, who else didn't qualify on the rifle that

day?...Right. That's because you missed all your shots? . . . And you told us on

Wednesday that's because it was a bad rifle, correct?" (A. 243). Defendants'

counsel also asked: "It's your testimony under oath before this jury that that rifle

was faulty?....As a matter of fact, sir, you know there was nothing wrong with that rifle?....And you failed in that 10 meter, right?"  (A. 236).

In June 2009, superior officers at the Billerica Police Department informed Mr. Angiuoni that he had not qualified as a police officer with the Billerica Police Department.  (A. 217).  He was given a short rundown of skills that required improvement.  (A. 218).  Mr. Angiuoni agreed to try to improve in these areas. (A. 218).  Mr. Angiuoni believed that he indeed improved in these areas because he did not receive any subsequent written warnings by the Police Department regarding his performance.  (A. 225).  Additionally, no remedial training was given to Joe Angiuoni and further, he was placed in a police cruiser by himself all throughout the summer and fall of 2009.  (A. 221-24).  However, in late October 2009, Officer Moran, the very same officer that complained of Appellant Angiuoni's veteran status, wrote a negative review of Joe Angiuoni.  (A. 50-51, 162).

 In November 2009, Mr. Angiuoni was called into a meeting with Police Chief Rosa.  (A. 170, 226).  Officers Balboni and Doyle were also at this meeting. (A. 227).  Mr. Angiuoni was notified that he was placed on administrative leave because he was "not cutting it."  (A. 227).  At trial, Chief Rosa gave a variety of reasons for the dismissal of Joe Angiuoni. (*See*, Chief Rosa testimony, generally, Transcripts, Day 2, Morning and Afternoon Sessions).  Chief Rosa claimed that

Mr. Angiuoni was unsafe and unfit for police work but acknowledged that Joe Angiuoni worked alone in a police car for several months at a time without incident. (A. 169-70). The Defendants also attempted to portray Mr. Angiuoni as a gung ho police officer with an aggressive attitude toward civilians, but Joe Angiuoni only made one or two arrests during the time he was a Police Officer with the Billerica Police Department. (A. 186). The Chief also claimed that Mr. Angiuoni's failure at the rifle range played a significant factor in terminating Mr. Angiuoni. (A. 173-74). Ultimately, Chief Rosa did not provide any rule or regulation that Joe Angiuoni purportedly violated when recommending a letter of discharge to the Town Supervisor. (A. 171). Yet, it is obvious from Chief Rosa's notes that he relied upon the negative assessment provided by Officer Moran in making his decision to relieve Appellant Angiuoni of his duties. (A. 184). Mr. Angiuoni's replacement was Officer Fontana who was Chief Rosa's fifty-plus year old neighbor who apparently crashed a police cruiser into civilian vehicles. (A. 180-83).

At trial, the Defendants gave the unmistakable inference that the police department is friendly towards veterans. However, Mr. Angiuoni's counsel attempted to admit evidence that the Defendants had previously been accused of discriminating against veterans. Specifically, Appellant's counsel attempted to introduce evidence of a lawsuit filed by a veteran against the Billerica Police

Department.  (A. 87-90).  The trial judge denied this motion.  (A. 123-24).

Additionally, the trial judge granted a Motion in Limine to exclude evidence of

negotiations on a Collective Bargaining Agreement which would have shown that

"the Town wanted to exempt itself from the Massachusetts Civil Service Statute,

the same law that provided Angiuoni with a preference in the event of layoffs for

being a disabled veteran."  (A. 84-86, 96, 123).  However, the trial court denied a

Motion in Limine to exclude evidence as to the number of veterans that are

employed by the Billerica Police Department.  (A. 91-94, Add. 3-4).  The court

allowed Defendants' counsel to refer to the number of veterans in the Department

even though the trial judge acknowledged the evidence was of "low probative

value." (Add. 3).  Defendants' counsel's references to Billerica officers with a

veteran status permeated the trial.  This is best epitomized in the Defendants' direct

examination of Officer Grogan.  Officer Grogan is one of the officers who oversaw

the rifle range test in which Joe Angiuoni missed 30 out of 30 shots at a ten-meter

distance.  (A. 34).  Defendants' counsel consistently referred to the veteran status

of this officer and others.  Defendants' counsel elicited the following testimony:

> Q     And do you know whether or not the other two
>         officers have any military background?
>
> A     Oh, yes, they do, yeah.
>
> [ . . . ]

12

A    Officer Brady, he's a veteran. I think he's a medal
     earner. I don't even know the correct term, but I
     also know that he has got a lot of specialized
     training.  In fact, he served as a sniper in his
     military unit. I know that for a fact.

Q    How about Officer Henkler?

A    Officer Henkler is – basically, is a reservist in the
     Coast Guard.  He's also an instructor for them and
     he also served overseas along with Officer Brady.
     They both served overseas, I believe, in Iraq and
     Iran.

Q    And not to bypass anyone, how about yourself?

A    I don't have those commendations, but I did serve
     six years in the Army National Guard.  I was never
     activated. I never served overseas.

(A. 244).

Officer Grogan, after he had vouched for numerous veterans who work on

the Billerica force, then drove the point home, stating "[t]here's a 'DNQ' next to

that with the rifle, which means that he did not qualify with the rifle that day."  (A.

246).  The number of veterans was also mentioned in the Defendants' opening,

closing and throughout the trial.  (A. 149, 250-51, and *see* Testimony, generally, all

Transcripts).

The trial court allowed numerous references to the number of veterans on

the force and also allowed Billerica Police Officers to observe the trial without

being sequestered.  (A. 151).  Appellant's counsel notified the trial judge of the

13

violation of Fed. R. Evid. 615.  (A. 151).  In any event, many fact witnesses (who were police officers) were unnecessarily exposed to the fact testimony of other police officers who testified.

Ultimately, the jury returned a verdict in favor of the Defendants after which a final judgment was entered.  (A. 16, Add. 1).  Appellant Angiuoni timely filed a Notice of Appeal on October 24, 2014.  (A. 252-53).  This is an appeal of that judgment.

## SUMMARY OF THE ARGUMENT

1.    The Defendants went to great lengths to highlight that Appellant Angiuoni failed the rifle range test while he was an officer with the Billerica Police Department.  At trial, Appellant Angiuoni attempted to introduce rebuttal evidence which would have counteracted and/or disproven the Defendants' assertion that Appellant Angiuoni is not competent with a rifle.  The trial court refused to admit this crucial piece of evidence.  This refusal constituted reversible error whereas a party may present rebuttal evidence as a matter of right.  As a matter of law, this rebuttal evidence should have been shown to the jury.  Consequently, Appellant Angiuoni should be afforded a new trial.

2.    At trial, the Defendants called a litany of fact witnesses in an attempt to disprove Appellant Angiuoni's USERRA claim.  However, many of these fact witnesses were Billerica Police Officers who remained in the courtroom

throughout the trial. Appellant Angiuoni's counsel notified the Court that those witnesses were unsequestered, but the trial court failed to sequester the Defendants' witnesses pursuant to Fed. R. Evid. 615. Fed. R. Evid. 615 has been put in place to discourage and expose fabrication, inaccuracy, and collusion. Moreover, Fed. R. Evid. 615 makes the exclusion of witnesses a matter of right and the decision is no longer committed to the court's discretion. Consequently, the trial court's failure to sequester the numerous witnesses presented by the Defendants was greatly prejudicial to Appellant Angiuoni. Accordingly, Appellant Angiuoni should be afforded a new trial.

3.    The Defendants were allowed to introduce at trial the number of veterans at the Billerica Police Department. The number of veterans on the force was emphasized in the Defendants' opening and closing statements, and throughout trial. This type of "me too" testimony is routinely denied by the federal courts as inadmissible because it is deemed highly prejudicial and often found to be irrelevant and/or of low probative value. Appellant Angiuoni's case centered on the assertion that his FTO, Officer Moran, had an anti-military sentiment which motivated Officer Moran to write an unfavorable report regarding Joe Angiuoni and this report was relied on by supervisors in determining whether or not to terminate Appellant Angiuoni. Rather than focusing on the central issue, the case morphed into whether this was a pro-military or anti-military police department.

The inordinate and repetitive mentioning of the amount of veterans on the force

skewered the issues at trial and negated any chances of a fair trial for Appellant

Angiuoni. As a matter of law, this testimony should have been excluded at trial.

## ARGUMENT

I. **The Trial Court, As A Matter of Law, Should Have Allowed Appellant Angiuoni To Introduce Crucial Rebuttal Evidence That Would Have Counteracted And/Or Disproven The Defendants' Theory That Mr. Angiuoni Is Not Competent With A Rifle.**

The trial court's failure to permit rebuttal evidence which directly

counteracts, repels or disproves evidence submitted by the opposing party is a

matter of right and consequently, the standard of review to be applied is de novo.[1]

*Urban Inv. and Development Co. v. Turner Const. Co.*, 35 Mass. App. Ct. 100, 616

N.E.2d 829 (1993); *Teller v. Schepens*, 25 Mass. App. Ct. 346, 518 N.E.2d 868

(1988).

The trial court erroneously excluded critical rebuttal evidence at Appellant

Angiuoni's trial. The Defendants went to great lengths to claim at trial that

Appellant Angiuoni failed the rifle range test while he was enlisted with the

Billerica Police Department. Defendants' counsel claimed at closing,

---

[1] In most instances, the decision whether to exclude or admit evidence rests within the discretion of the trial court. As a result, evidentiary issues in most cases are reviewed under the abuse of discretion standard. This is one of those limited instances in which the de novo standard of review should be applied. *See*, *Teller v. Schepens*, 25 Mass. App. Ct. 346, 518 N.E.2d 868 (1988).

> Angiuoni, DNQ – remember that? You just heard a little about this morning – at the range. That couldn't be because he wasn't taking the range qualification seriously, or perhaps shot poorly that day, oh, no, no. It was a bad rifle. Do you have any question that that rifle was checked. You have a Bronze Star winner who looked over those rifles . . . . [The rifles] were checked. There was nothing wrong with them. He would argue he was provided with a sub-par rifle and no one noticed, except it wasn't true.

(A. 247-48).

The Chief, when questioned about the rifle range test, testified:

> Q        As part of the field training, officers have to qualify with handguns and rifles, correct?
>
> A        That's correct.
>
> Q        And did you receive information back in May of 2009 as to whether or not Mr. Angiuoni passed his examine for a rifle?
>
> A        I had heard there were significant issues at the range in general, but, yes, he failed on the patrol rifle….

(A. 172).

The Chief further testified:

> Q        And in the middle where it says "DNQ," what does "DNQ" stand for?
>
> A        "Did not qualify."
>
> Q        Is he the only officer who scored a DNQ?

> A     He is the only officer not only on this score sheet,
>        but he's the only officer that I know of in the
>        department in that whole training cycle that
>        DNQ'd on the rifle.

(A. 175).

All told, there were pages and pages of testimony dedicated to Joe Angiuoni's low score at the rifle range. Indeed, this rifle range test was the only third party information which purportedly reflected that Appellant Angiuoni may be a poor choice for the Billerica Police Department.

The majority of the complaints against Mr. Angiuoni were simply diatribes that these officers would have handled certain things in a different manner. The failing grade received by Joe Angiuoni at the rifle range was the only non-discretionary test in which the Appellant received a poor grade. The Defendants took shot after shot at this poor grade and Appellant Angiuoni was prevented from countering this critical piece of evidence. Specifically, Appellant's counsel attempted to introduce at trial a subsequent rifle range test which would have conclusively proven that Joe Angiuoni easily passed this rifle range test a few months later, and would have supported Appellant Angiuoni's contention that the rifle utilized in the rifle range test was subpar and/or not functioning properly. (A. 74, Add. 8-9). Defendants' counsel greatly objected to the introduction of this critical piece of evidence whereas it would have undercut a significant portion of

18

the Defendants' case against Mr. Angiuoni.  In their closing, Defendants' counsel hammered home, "[The rifles] were checked. There was nothing wrong with them. [Angiuoni] would argue he was provided with a sub-par rifle and no one noticed, except it wasn't true."  (A. 248).  It is highly improbable that such an argument would have been forwarded by the Defendants, if it at all, had this critical piece of evidence been admitted which showed that Joe Angiuoni is an accurate rifle range shot.  (A. 74, Add. 8-9).  That test would have shown that Appellant Angiouni can easily hit a rifle target from a distance of 10 meters.  This critical piece of evidence, wrongfully excluded by the trial judge, would have shown that this accomplished Iraqi war veteran was a skillful marksman.  Instead, the Defendants were allowed to portray Appellant Angiuoni as an amateurish person who could not even hit a target from approximately thirty (30) feet away.  This unrebutted evidence was a significant piece of evidence and the exclusion of the subsequent rifle range test was greatly prejudicial to Joe Angiuoni's case.

Rebuttal evidence that seeks to refute evidence presented by the other side is admissible as a matter of right.  *Urban Inv. and Development Co. v. Turner Const. Co.*, 35 Mass. App. Ct. 100, 616 N.E.2d 829 (1993); *Teller v. Schepens*, 25 Mass. App. Ct. 346, 518 N.E.2d 868 (1988).  In *Urban*, the Court explained "a *party may present rebuttal evidence as a matter of right*, as when seeking to refute evidence presented by an opposing party." *Id*. at 103, 832 (emphasis added).  In *Teller*, the

Court forcefully stated "a party may present rebuttal evidence as a matter of right and in which the *denial of that right would be an error of law*." *Teller*, 25 Mass. App. Ct. at 350, 518 N.E.2d at 870 (emphasis added). The federal courts have further explained "[r]ebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Allen v. Dairy Farmers of America*, No. 5:09-CV-230, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013)(unpublished)(citation omitted); *U.S. v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974); *U.S. v. Laboy*, 909 F.2d 581, 588 (1st Cir. 1990).

The subsequent rifle range test would have clearly repelled, counteracted and disproved the Defendants' argument that Appellant Angiuoni is a poor marksman with a rifle. This excluded evidence would have clearly refuted a critical piece of evidence relied upon and highlighted by the Defendants. The Defendants' side of the story went unrebutted and this cast a cloud during Mr. Angiuoni's trial that he was not competent with a rifle and consequently not competent to be an officer with the Billerica Police Department. In many evidentiary issues, a trial court retains the discretion to either admit or exclude evidence; however, rebuttal testimony cannot be excluded "where facts discrediting the proponent's witnesses have been offered." *Flowers v. Green*, 420 Pa. 481, 484, 218 A.2d 219, 220 (1966)(citing Wigmore on Evidence (2d) Ed., Vol 4, p. 20, s 1873). Additionally, rebuttal evidence is "not subject to the

discretionary exclusion of the trial court." *Flowers v. Green*, 420 Pa. 481, 484, 218 A.2d 219, 220 (1966)(citation omitted). As a matter of law, the trial court's refusal to allow rebuttal evidence constituted reversible error which requires that Appellant Angiuoni be afforded a new trial.

**II. The Trial Court Failed To Sequester Fact Witnesses Presented By The Defendants Pursuant To Fed. R. Evid. 615 Requiring A Reversal By This Honorable Court.**

A trial court's refusal to sequester witnesses pursuant to Fed. R. Evid. 615 is reviewed de novo. *Opus 3 Limited v. Heritage Park, Inc*., 91 F.3d 625, 628 (4th Cir. 1996). Fed. R. Evid. 615 requires a trial court, upon a party's request, to sequester witnesses. *U.S. v. Magana*, 127 F.3d 1, 5 (1st Cir. 1997). Sequestration is now mandated by Fed. R. Evid. 615 and is no longer subject to discretion. *Id.*

The law is overwhelmingly clear that the sequestration of fact witnesses must be adhered to by a trial judge sitting in a federal court. This steadfast rule is in place because "[i]t is now well recognized that sequestering witnesses 'is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice.'" *Opus 3 Limited v. Heritage Park, Inc*., 91 F.3d 625, 628 (4th Cir. 1996). It has further been explained that Fed. R. Evid. 615 "is designed to discourage and expose fabrication, inaccuracy, and collusion." *Opus 3 Limited v. Heritage Park, Inc*., 91 F.3d 625,

628 (4ᵗʰ Cir. 1996).  At the beginning of fact testimony in Appellant Angiuoni's trial, Appellant's trial counsel notified the Court that certain fact witnesses were in the courtroom.  (A. 151).  As a result, Appellant Angiuoni's counsel requested that the sequestration of witnesses be invoked.  (A. 151).  In the midst of lodging this request, the trial court cut Mr. Angiuoni's counsel off and refused this request for sequestration.  (A. 151).  Consequently, fact witnesses were in the courtroom while other fact witnesses testified.  The failure to sequester witnesses in this case regrettably allowed the Defendants' witnesses to tailor their testimony to that of the other witnesses.  "The purpose of the rule is to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses and to aid in detecting testimony that is less than candid."  *U.S. v. Ell*, 718 F.2d 291, 293 (9ᵗʰ Cir. 1983)(citing *Geders v. United States*, 425 U.S. 80, 87 (1976)).  Because of the trial court's critical failure to sequester the Defendants' witnesses, the potential for fabricated and/or tailored testimony was clearly evident and this critical failure also precluded a fair and effective cross-examination of the Defendants' witnesses.

The sequestration of witnesses, which is now codified in Fed. R. Evid. 615, has always been a bedrock rule of the U.S. court system.  Indeed, this rule predates the founding of our country.  The federal courts have noted that "[s]equestering witnesses to assist in ascertaining the truth is at least as old as the Bible." *U.S. v. Jackson*, 60 F.3d 128, 133 (2d Cir. 1995)(citation omitted).  That is why

"[b]ecause of its important role in reaching the truth, Rule 615 carries a presumption of favoring sequestration." *Opus 3 Limited v. Heritage Park, Inc.*, 91 F.3d 625, 628 (4th Cir. 1996)(citing *U.S. v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986)). Further, "[s]crupulous adherence to [the sequestration rule] is particularly necessary in those cases in which the outcome depends on the relative credibility of the parties' witnesses." *Opus 3 Limited v. Heritage Park, Inc.*, 91 F.3d 625, 629 (4th Cir. 1996)(citing *U.S. v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986)). Moreover, "[w]hen the individual in question is a key fact witness, 'adherence to the sequestration rule is most important.'" *Kozlowski v. Hampton School Bd.*, 77 Fed.Appx. 133, 152 (4th Cir. 2003)(unpublished)(citing *Opus*, 91 F.3d at 629).

The federal courts have noted that Fed. R. Evid. 615, with regard to the sequestration of witnesses, is now mandatory in nature and the failure to sequester witnesses requires a reversal. *U.S. v. Warren*, 550 F.2d 219, 227 (5th Cir. 1977); *see also*, *U.S. v. Magana*, 127 F.3d 1, 5 (1st Cir. 1997)(stating that "Rule 615 now requires the court, upon a party's request, to 'order witnesses excluded so that they cannot hear the testimony of other witnesses.'"); *U.S. v. Burgess*, 691 F.2d 1146, 1157 (4th Cir. 1982)(stating "F.R.Evid. 615 automatically mandates reversal whenever noncompliance with the rule is shown"). Upon the codification of Fed. R. Evid. 615 in 1974, "[t]he rule makes the exclusion of witnesses a matter of right and the decision is no longer committed to the court's discretion as it once was."

23

*U.S. v. Ell*, 718 F.2d 291, 292 (9th Cir. 1983)(citing Fed. R. Evid. 615 advisory

committee note).  As a matter of law, the Court's failure to sequester the

Defendants' fact witnesses was greatly prejudicial and requires that Appellant

Angiuoni be afforded a new trial.

**III.    The Trial Court Impermissibly Allowed The Defendants To Mention
The Number Of Veterans Employed By the Billerica Police Department.
This Evidence Had Little Or No Probative Value, Was Highly
Prejudicial, And Was Confusing To The Jury.  The Defendants'
Innumerable References To Veterans On The Police Force Clearly
Prevented Mr. Angiuoni From Receiving A Fair Trial.**

A trial court's "decision to admit evidence is reviewed for abuse of

discretion."  *U.S. v. Mangual-Santiago*, 562 F.3d 411, 425 (1st Cir. 2009).  Errors

in admitting evidence pursuant to Fed. R. Evid. 401 and Fed. R. Evid. 403 are not

harmless if the evidence contributed to the decision.  *See*, *Mangual-Santiago*, 562

F.3d at 426.

The trial court denied Appellant Angiuoni's motion to exclude evidence of

the number of veterans in the Billerica Police Department.  (A. 91-94, Add. 3-4).

This allowed the Defendants to consistently emphasize to the jury the number of

veterans in the Billerica Police Department.  The Defendants' use of veteran's

references is littered throughout the trial transcript.  This highly prejudicial

evidence was highlighted in the Defendants' opening and closing arguments.  This

was irrelevant and highly prejudicial evidence.  Appellant Angiuoni's claim at trial

was that his FTO (Officer Moran) held an anti-military bias against him.

Specifically, that there were upcoming budget cuts during the Great Recession of

2009 and that veterans would receive protected status under USERRA.

Additionally, Joe Angiuoni asserted that Chief Rosa and the Department relied on

Officer Moran's biased and unfavorable review of Appellant Angiuoni in

determining whether or not the Appellant should become a permanent member of

the Billerica Police Department.  Instead, the inordinate amount of references to

the number of veterans on the force gave the mistaken impression to the jury that

Appellant Angiuoni had to prove that the entire department held a strong anti-

military bias.  This skewering of the issues is epitomized by the Defendants'

closing wherein counsel states "[t]his has nothing to do with the fact that he's a

disabled veteran.  The department, we have heard, is almost half veterans."  (A.

250-51).

Even if this evidence had some probative value, the danger of unfair

prejudice and confusing the jury was palpably evident here.  Consequently, the

trial court should have never allowed this highly prejudicial evidence at Appellant

Angiuoni's trial.  Indeed, the trial court itself acknowledged that the mentioning of

the number of veterans on the force was of "low probative value," but

unimaginably decided to admit this highly prejudicial, irrelevant testimony.[2] (Add. 3). This highly inflammatory evidence should have played no role at Appellant Angiuoni's trial.

The numerous mentions of the number of veterans in the Billerica Police Department was nothing more than "me too" testimony which is generally precluded from any discrimination trial. The courts have forcefully explained,

> "[M]e too" evidence is not admitted at trial because the probative value of such evidence is judged to be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" . . . [i]ndeed, "trial courts regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant."

*Andazola v. Logan's Roadhouse, Inc*., No. CV-10-S-316-NW, 2013 WL 2355350, at *2 (N.D. Ala. May 24, 2013)(unpublished)(citing Fed. R. Evid. 403; *Johnson v. Interstate Brands Corp*., 351 Fed.Appx. 36, 41 (6th Cir. 2009)(unpublished)); *Sorenson v. City of Aurora*, 984 F.2d. 349, 354-55 (10th Cir. 1993); *Haskell v. Kaman Corp*., 743 F.2d. 113, 121-22 (2d Cir. 1984).

Additionally, evidence is unfairly prejudicial when such evidence has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *U.S. v. Ballou*, 59 F. Supp. 3d 1038, 1049 (D.N.M.

---

[2] Please note it is the Appellant's belief that this evidence was entirely irrelevant and unnecessary.

2014)(citations omitted); *U.S. v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008).
The number of veterans had absolutely no probative value in this case. This
testimony distracted the jury from the actual issue at hand and reassured the jury
that the Defendants purportedly had a good relationship with veterans. This
assurance, which the judge allowed at trial, was not necessarily true whereas a
previous veteran had sued the Defendants for violation of USERRA. (A. 87-90).
Also, the Appellant had tried to admit evidence the Town of Billerica wished to
remove itself from the Massachusetts Civil Service Statute which would result in
the Town of Billerica not being required to hire veterans. (A. 96). Thus, the trial
court allowed the Defendants to raise the veteran issue solely to their benefit, and
prevented Appellant Angiuoni from presenting any evidence to counter the
Defendants' assertion. In sum, the repetitive mentioning of the number or veterans
on the force detracted the jury from the issue at hand and clearly prejudiced Joe
Angiuoni.

## CONCLUSION

As we are painfully aware, veterans have not been treated particularly well
over the last few years. Appellant Angiuoni honorably served this nation in the
war torn country of Iraq. As a country, we owe these returning veterans many
things. In the least, Joe Angiuoni should have been afforded a fair trial. He was

27

not afforded a fair trial in September 2014.  This highly accomplished, disabled

veteran deserves a new trial.

Accordingly, we respectfully request that this Honorable Court afford Joe

Angiuoni a new trial.

Respectfully submitted,

John V. Siskopoulos (No. 1171443)
Siskopoulos Law Firm, LLP
198 Tremont Street, #320
Boston, MA 02116
(617) 959-1628
jvs@siskolaw.com


Alexandra Siskopoulos (No. 1171444)
Siskopoulos Law Firm, LLP
33 West 19th Street, 4th Floor
New York, NY 10011
(646) 942-1798
acs@siskolegal.com

Attorneys for Plaintiff-Appellant

November 9, 2015

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,337 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

John V. Siskopoulos (No. 1171443)
Siskopoulos Law Firm, LLP
198 Tremont Street, #320
Boston, MA 02116
(617) 959-1628
jvs@siskolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2015, I electronically filed the foregoing Appellant's Brief and Appendix with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Leonard H. Kesten
Gregor A. Pagnini
Deidre Brennan Regan
Jeremy Silverfine
Brody Hardoon Perkins & Kesten LLP
699 Boylston Street, 12th Floor
Boston, MA 02116

John V. Siskopoulos (No. 1171443)
Siskopoulos Law Firm, LLP
198 Tremont Street, #320
Boston, MA 02116
(617) 959-1628
jvs@siskolaw.com

November 9, 2015



# No. 14-2121

# *Angiuoni v. Town of Billerica et al.*

# Addendum Table of Contents

Judgment in a Civil Case (September 26, 2014) ............................................ ADD-1

Rulings on Motions in Limine, Final Pre-Trial Conference
(May 21, 2014) ...................................................................................... ADD-2

Colloquy on Witness Sequestration (September 15, 2014) ............................ ADD-5

Bench Ruling Sustaining Objection to Admission of Plaintiff's Exhibit
(September 17, 2014) .............................................................................. ADD-7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Joseph Angiuoni

V.

CIVIL ACTION: 11-11661-NMG

Town of Billerica, et al

## **JUDGMENT IN A CIVIL CASE**

GORTON, U.S.D.J.                                    September 26, 2014

This action came before the Court for a trial by jury. The issues have been tried and the jury

has rendered its verdict. IT IS ORDERED AND ADJUDGED that final judgment is hereby entered

in favor of the Defendants.

By the Court,

/s/ Christine M. Patch___
DEPUTY CLERK

1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
2


3


4    JOSEPH ANGIUONI,                    )
                                         )
5                        Plaintiff       )
                                         )
6                                        )   No. 11-11661-NMG
     vs.                                 )
7                                        )
     TOWN OF BILLERICA, DANIEL ROSA,     )
8    individualy and in his official     )
     capcity of CHIEF OF POLICE,,
9                        Defendant.


10


11   BEFORE:   THE HONORABLE NATHANIEL M. GORTON


12


                     FINAL PRE-TRIAL CONFERENCE
13


14


15
         John Joseph Moakley United States Courthouse
16                    Courtroom No. 4
                     One Courthouse Way
17                   Boston, MA 02210


18
                       May 21, 2014
19                      3:29 p.m.


20


21


22


23             Valerie A. O'Hara, FCRR, RPR
                  Official Court Reporter
24       John Joseph Moakley United States Courthouse
                One Courthouse Way, Room 3204
25                   Boston, MA 02210
                E-mail: vaohara@gmail.com

1      that the bias was a proximate cause of plaintiff's termination.

2           Fourth, plaintiff's motion in limine to preclude

3      defendants from offering certain testimony about plaintiff's

4      job performance, Docket Number 86 is denied without prejudice.

5           In general, the Court will permit defendants to

6      present evidence about deficiencies in plaintiff's job

7      performance that were known to Chief Rosa at the time he

8      recommended plaintiff for administrative leave and termination

9      or were known to officers who provided their opinions about

03:33PM 10      plaintiff's performance to the chief.

11           The Court will not limit defendants to the specific

12      instances of poor performance identified by Chief Rosa in

13      various written reports.

14           Fifth, plaintiff's motion in limine to exclude

15      evidence of the number of veterans on the Billerica Police

16      Department, Docket 87 is denied without prejudice. It is

17      unclear from the information presently before the Court whether

18      any of the veterans employed by the town are disabled or

19      otherwise stand to receive preferential treatment based upon

03:34PM 20      their status as veterans.

21           Assuming that none of the veterans employed by the

22      department receives such preferential treatment, the evidence

23      that the department has hired other veterans is of low

24      probative value, but it is not sufficiently prejudicial or

25      likely to confuse the jury so as to warrant exclusion under

6

1    Federal Rule of Evidence 403.

2           Sixth, plaintiff's motion in limine to limit the

3    admissibility of what I'll say are written statements of

4    defendants and their employees, Docket Number 88 is denied

5    without prejudice.  The documents appear to be admissible for

6    the limited purpose of demonstrating that information

7    Chief Rosa considered in recommending that the town discharge

8    plaintiff.

9           To the extent that such documents contain hearsay, the

03:35PM 10   Court will instruct the jury that they may not consider them as

11   proof of the matters asserted therein, and in this regard, I

12   will entertain a proposed limiting instruction of the plaintiff

13   and entertain when such a limiting instruction ought to be

14   given if the plaintiff chooses to submit one.

15          Now, I'll hear from either side with respect to those

16   rulings.  Any comments, Mr. Sulman?

17          MR. SULMAN:  Yes, your Honor.  First, you mentioned

18   that you'd want me to provide examples of statements to you?

19          THE COURT:  Yes.

03:35PM 20         MR. SULMAN:  Would you like that now?

21          THE COURT:  Yes, you can do that now.

22          MR. SULMAN:  The types of statements or really any

23   statements that were said by police officers in the course of

24   their employment, such as when Robert Moran says, I think it's

25   BS that you get preference because of your status under the

* * * * *

ADD-4

1



1

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF MASSACHUSETTS
2

3    JOSEPH ANGIUONI,                    )
                                         )
4              Plaintiff                 )
                                         )
5         -VS-                           )   CA No. 11-11661-NMG
                                         )   Pages 1 - 58
6    TOWN OF BILLERICA, et al,           )
                                         )
7              Defendants                )

8

9              **JURY TRIAL - DAY ONE**

10             **-AFTERNOON SESSION-**

11     BEFORE THE HONORABLE NATHANIEL M. GORTON
              UNITED STATES DISTRICT JUDGE
12

13

14

15                          United States District Court
16                          1 Courthouse Way, Courtroom 4
                            Boston, Massachusetts  02210
17                          September 15, 2014, 2:10 p.m.

18

19

20

21

22                    LEE A. MARZILLI
23               OFFICIAL COURT REPORTER
                United States District Court
24             1 Courthouse Way, Room 7200
                   Boston, MA  02210
25                   (617)345-6787

[ Page 4 ]

```
  1                    P R O C E E D I N G S
  2              (Resumed, 2:10 p.m.)
  3              (Jury enters the courtroom.)
  4              THE COURT:  Good afternoon, jurors.  We are now ready
  5    to proceed with the evidence in the trial.  The plaintiff's
  6    case in chief is in order, so the plaintiff may call his first
  7    witness.
  8              MR. SULMAN:  Thank you, your Honor.  A quick question
  9    beforehand.  I noticed the next witness after this witness in
 10    the courtroom.  I wasn't sure if there was any concern,
 11    sequestration for having witnesses --
 12              THE COURT:  Well, if there hasn't been any motion
 13    about sequestration, then there's no problem.
 14              MR. SULMAN:  The plaintiff calls Dwayne Eidens.
 15                          DWAYNE EIDENS
 16    having been first duly sworn, was examined and testified as
 17    follows:
 18              THE CLERK:  And would you please state your name for
 19    the record, spelling your last.
 20              THE WITNESS:  Dwayne Eidens, E-i-d-e-n-s.
 21    DIRECT EXAMINATION BY MR. SULMAN:
 22    Q.   Good afternoon, Mr. Eidens.
 23    A.   How are you doing, sir?
 24    Q.   Sir, where do you live?
 25    A.   5 Michael Road in North Billerica, Massachusetts.
```

```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2

 3    * * * * * * * * * * * * * * * * *
      *JOSEPH ANGIUONI               *
 4             Plaintiff            *      CIVIL ACTION
                  vs.              *      No. 11-11661-NMG
 5                                 *
      *TOWN OF BILLERICA, DANIEL ROSA *
 6           Defendants            *
      * * * * * * * * * * * * * * * * *
 7

 8

 9

10            BEFORE THE HONORABLE NATHANIEL M. GORTON
              UNITED STATES DISTRICT JUDGE and a Jury
11             Civil Jury Trial Day 3 Morning Session
                        September 17, 2014
12

13    APPEARANCES:

14            LAW OFFICES OF JOSEPH L. SULMAN, ESQ, (By Joseph L.
      Sulman, Esq., and David I. Brody, Esq.), 1001 Watertown
15    Street, Third Floor, West  Newton, Massachusetts
      02465, on behalf of Plaintiff
16
              BRODY, HARDOON, PERKINS & KESTON, (By Jeremy I.
17    Silverfine, Esq. and Gregor A. Pagnini, Esq.), One
      Exeter Plaza, Boston, Massachusetts 02116, on behalf of
18    Defendants

19

20                                Courtroom No. 4
                                  1 Courthouse Way
21                                Boston, Massachusetts 02210

22
                        JAMES P. GIBBONS, RPR/RMR
23                        Official Court Reporter
                        1 Courthouse Way, Suite 7205
24                      Boston, Massachusetts  02210
                           jmsgibbons@yahoo.com
25
```

ADD-7

[ Page 68 ]

```
1    A    When you're doing outside patrol, yes, you are.

2    Q    What kind of weapon do you have?

3    A    I believe it's the same weapon.

4    Q    Were you tested on that at the Sheriff's Department?

5    A    Yes, I was.

6    Q    At some point after your termination from Billerica, did

7    you obtain a job where you had to be tested again on the

8    rifle?

9    A    I'm sorry.  Can you repeat that, Joe.

10   Q    After your termination from Billerica, did you obtain a

11   subsequent job where you were tested on the rifle?

12   A    Yes.

13   Q    What job was that?

14   A    I worked at F.M.C. Devens, which is a federal officer --

15   I'm a correctional officer at a federal prison.

16            MR. SULMAN:  Your Honor, I have a proposed exhibit

17   I would like to show the witness, but it's a physical

18   exhibit.  I'm not sure how to show it without the jury

19   seeing it.

20            MR. SILVERFINE:  We have a ruling on this.

21            MR. SULMAN:  There was no ruling on this.

22            THE COURT:  I will see counsel at sidebar.

23   (SIDEBAR CONFERENCE AS FOLLOWS:

24            MR. SULMAN:  This exhibit is the target that

25   Officer Angiuoni shot at while he was being trained at the
```

ADD-8

1    Bureau of Prisons with the same rifle, and, he will tell us

2    the distances.  It's completely relevant to his --

3           THE COURT:  How is it relevant?

4           MR. SULMAN:  It's relevant to showing his accuracy,

5    and this mistake was probably a result of a faulty rifle.

6    And he wasn't asked to certify again.  It's probative value

7    to the jury and definitely relevant.

8           MR. SILVERFINE:  A couple of things, Judge.

9         He's never shown this to me.

10          MR. SULMAN:  Your Honor --

11          MR. SILVERFINE:  I'm talking to the Judge.

12        He has never shown this to me.  I objected at the time.

13   It's irrelevant to his failure at the time, other than he

14   qualified before and after.  He has said he failed here.

15   That's the issue.  It's not the issue of what happened at

16   FMC Devens.

17          MR. SULMAN:  I did show --

18          THE COURT:  I'm not going to have an argument in

19   front of me.

20          MR. SULMAN:  Sorry.

21          THE COURT:  The objection is sustained.

22   **END OF SIDEBAR CONFERENCE.)**

23   Q   Officer Angiuoni, going back to Exhibit 107, did you see

24   at the bottom it says, "Officer Coffey and Officer Moran

25   will be providing him with remedial training."

* * * * *

ADD-9