# No. 14-2121

IN THE

## United States Court of Appeals for the First Circuit



JOSEPH ANGIUONI,

*Plaintiff-Appellant,*

-V-

TOWN OF BILLERICA; DANIEL ROSA, individually and in his official capacity as Chief of Police,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Massachusetts, District Court No. 1:11-cv-11661-NMG

## Appellant's Reply Brief

JOHN V. SISKOPOULOS
BAR NO. 1171443
  *COUNSEL OF RECORD*
SISKOPOULOS LAW FIRM, LLP
198 TREMONT STREET, # 320
BOSTON, MA 02116
(617) 959-1628

ALEXANDRA C. SISKOPOULOS
BAR NO. 1171444
SISKOPOULOS LAW FIRM, LLP
33 WEST 19TH STREET, 4TH FLOOR
NEW YORK, NY 10011
(646) 942-1798

*COUNSEL FOR PLAINTIFF-APPELLANT*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT ........................................................................................1

    I.    The Excluded Rifle Range Test Was Preserved for Review and the Failure to Admit the Subsequent 30/30 Test Constitutes Reversible Error Under Any Legal Standard ..........................................1

    II.    The Court Had a Duty to Sequester the Fact Witnesses Called by the Appellees. Despite the Appellees' Claims, a Court Does Not Have Discretion to Allow Fact Witnesses to Remain in the Courtroom. The Failure to Sequester Witnesses Affected the Fairness and Integrity of the Trial and a Reversal Is Required as a Matter of Law...................................................................................11

    III.    The Appellees Brought Forth the Highly Prejudicial and Irrelevant Evidence That the Billerica Police Department Employed Many Veterans. This Evidence Had Little or No Probative Value and Greatly Prejudiced Appellant Angiuoni's USERRA Claims. As a Matter of Law, the Admission of This Irrelevant and Highly Prejudicial Evidence Was Reversible Error ......................................................................................16

CONCLUSION .....................................................................................22

CERTIFICATE OF COMPLIANCE.....................................................23

CERTIFICATE OF SERVICE ..............................................................24

## <u>TABLE OF AUTHORITIES</u>

### Cases

<u>*Page*</u>

*Allen v. Dairy Farmers of America*,
    No. 5:09-CV-230, 2013 WL 211303 (D. Vt. Jan. 18, 2013) ......................... 6

*Becker v. Department of Veteran Affairs*,
    414 Fed.Appx. 274 (Fed. Cir. 2011) ............................................................19

*Burroughs v. Department of Army*,
    254 Fed.Appx. 814 (Fed. Cir. 2007) ............................................................19

*Crowe v. Bolduc*,
    334 F.3d 124 (1st Cir. 2003) ........................................................................17

*Flowers v. Green*,
    420 Pa. 481, 218 A.2d 219 (1966) .................................................................4

*Geders v. United States*,
    425 U.S. 80 (1976) ..........................................................................................4

*Miller v. Thayer Corp.*,
    No. 2:10-CV-307-JAW, 2011 WL 3624515 (D.Me. Aug. 17, 2011) .............5

*Pinal Creek Grp. v. Newmont Min. Corp.*,
    No. CV-91-1764-PHX-DAE, 2006 WL 1766494
    (D. Ariz. June 26, 2006) ..............................................................................16

*Richardson v. Missouri Pacific R. Co.*,
    186 F.3d 1273 (10th Cir. 1999) ...................................................................17

*Rodriguez v. Senor Frog del la Isla, Inc.*,
    642 F.3d 28 (1st Cir. 2011) ..........................................................................17

*Sheehan v. Dep't of Navy*,
    240 F.3d 1009 (Fed. Cir. 2001) ...................................................................19

**_Page_**

*Smith v. Ford Motor Co.*,
    626 F.2d 784 (10th Cir. 1980) ....................................................................2, 3

*Stewart v. Hooters of Am., Inc.*,
    No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873
    (M.D. Fla. June 18, 2007)...............................................................................16

*United States v. Burgess*,
    691 F.2d 1146 (4th Cir. 1982) .......................................................................14

*United States v. Brewer*,
    947 F.2d 404 (9th Cir. 1991) ........................................................................ 13

*United States v. Brown*,
    548 F.2d 1194 (5th Cir. 1977) .......................................................................21

*United States v. Clotida*,
    892 F.2d 1098 (1st Cir. 1989) ....................................................................3, 4

*United States v. Chrzanowski*,
    502 F.2d 573 (3d Cir. 1974) .............................................................................6

*United States v. Ell*,
    718 F.2d 291 (9th Cir. 1983) ........................................................................13

*United States v. Garvey*,
    688 F.3d 881 (7th Cir. 2012) ........................................................................15

*United States v. Hitt*,
    981 F.2d 422 (9th Cir. 1992) ........................................................................21

*United States v. Magana*,
    127 F.3d 1 (1st Cir. 1997).......................................................................... 14

*United States v. Moore*,
    375 F.3d 259 (3d Cir. 2004) ..........................................................................11

*Page*

*United States v. Laboy,*
  909 F.2d 581 (1st Cir. 1990) ...................................................................4, 6

*United States v. LiCausi,*
  167 F.3d 36 (1st Cir. 1999)....................................................................3, 5

*United States v. Rhynes,*
  218 F.3d 310 (4th Cir. 2000) ....................................................................15

*United States v. Seschillie,*
  310 F.3d 1208 (9th Cir. 2002) .............................................................13, 14

*United States v. Vazquez-Botet,*
  532 F.3d 37 (1st Cir. 2008) .......................................................................2

*United States v. Warren,*
  550 F.2d 219 (5th Cir. 1977) ....................................................................14

*Weiss v. Chrysler Motors Corp.,*
  515 F.2d 449 (2d. Cir. 1975) ......................................................................2

## Judicial Rules

Fed. R. Evid. 103(a)(2) .................................................................................1

Fed. R. Evid. 403.......................................................................................21

Fed. R. Evid. 412(c) ...................................................................................12

Fed. R. Evid. 615...............................................................................12, 13, 14

Fed. R. Evid. 706 .......................................................................................12

**Other Authorities**

*Page*

Black's Law Dictionary 1114 (8th ed. 2004)............................................................2

Wigmore on Evidence (2d) Ed., Vol 4, p. 20, s 1873................................................4

## ARGUMENT

I. **The Excluded Rifle Range Test Was Preserved for Review and the Failure to Admit the Subsequent 30/30 Test Constitutes Reversible Error Under Any Legal Standard.**

Appellees erroneously claim that the trial court's refusal to allow in evidence regarding the subsequent rifle range test in which Appellant Angiuoni hit 30 out of 30 shots with a rifle ("30/30 test") was not preserved for appellate review. (Appellees' Brief, pp. 22-29). Upon attempting to introduce the proposed exhibit at trial, Appellees' counsel specifically states "[w]e have a ruling on this." (Addendum ("Add.") Add. 8). It is clear from the record that the Appellant attempted to renew his desire to bring forth this critical rebuttal evidence and was rebuffed by the trial court. (Add. 8-9). The attempt to introduce the 30/30 test, which would have directly rebutted the rifle range test in which Appellant Angiuoni missed all thirty shots ("0/30 test"), was an offer of proof. The exhibit is clearly described on the record and the court, during a sidebar conference on the record, asked for an explanation as to its relevance which was provided by Appellant's counsel. (Add. 8-9).

Pursuant to Fed. R. Evid. 103(a)(2), regarding preserving a claim of error, a party may claim error due to the exclusion of evidence if "a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a)(2). An offer of proof is a "presentation of evidence

1

for the record (but outside the jury's presence)… so that the evidence can be preserved on the record for an appeal of the judge's ruling…Such an offer may include tangible evidence or testimony (through questions and answers, a lawyer's narrative description, or an affidavit)." *United States v. Vazquez-Botet*, 532 F.3d 37, n. 9 (1st Cir. 2008)(citing Black's Law Dictionary 1114 (8th ed. 2004)). Moreover, the federal rules do not require any formal verbal requirements necessary to qualify for an offer of proof. *United States v. Vazquez-Botet*, 532 F.3d 37 (1st Cir. 2008)(stating that a court does not have to use the term "offer of proof" because "it is evident from the context that this is what the court intended.")  The Appellees readily acknowledge that the subsequent test had been denied in a prior motion, and the record is clear that an offer of proof was provided to the judge at trial during a sidebar conference. Thus, the issue was preserved.

The Appellees make no attempt to refute the case law cited in the Appellant's Brief, but rather argue the abuse of discretion standard applies in this instance. This argument is simply erroneous as a matter of law and pure common sense. The proper standard of review is de novo. The right to rebut evidence of your opponent is admissible as a matter of right and this rule has been recognized in both the state and federal courts. The federal courts have noted that rebuttal evidence is "not subject to the discretionary exclusion of the trial court." *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 459 (2d. Cir. 1975); *Smith v. Ford Motor*

*Co.*, 626 F.2d 784, 806 (10ᵗʰ Cir. 1980). With regard to common sense, a trial judge does not have the discretion to allow in a central piece of evidence (the 0/30 test) and thereafter, disallow evidence which directly rebuts evidence presented by the other side – namely the 30/30 test.

The Appellees have a fundamental misreading as to what constitutes rebuttal evidence and the applicable standard of review applied to rebuttal evidence. The Appellees rely on *United States v. LiCausi*, 167 F.3d 36 (1ˢᵗ Cir. 1999) and cases which rely on *LiCausi* in support of their argument that the abuse of discretion standard applies. This reliance on *LiCausi* is misplaced as that case did not address the issue of the preclusion of rebuttal evidence, but rather addressed the issue of *the order* in which evidence is admitted - namely whether evidence would have been more appropriately offered during the proponent's case in chief rather than as rebuttal evidence. In determining that particular issue, the court cites *United States v. Clotida*, 892 F.2d 1098 (1ˢᵗ Cir. 1989), and states "decisions as to what constitutes proper rebuttal evidence and the order in which the parties present their evidence lies within the sound discretion of the trial judge." *United States v. LiCausi*, 167 F.3d 36, 52 (1ˢᵗ Cir. 1999)(citations omitted). *Clotida* is yet another case that solely addresses the issue of the order in which evidence is admitted, and does not deal with issue of the preclusion of rebuttal evidence. *Clotida*, 892 F.2d 1098. *Clotida* specifically states "the order in which parties present their evidence

3

is totally within the discretion of the trial court." *Id.* at 1107, *citing Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1134 (1976). Indeed, a review of *Geders* shows that the U.S. Supreme Court was careful to apply this abuse of discretion standard solely to the order in which parties produce their evidence and no more. *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1134 (1976). In fact, the court in *Geders* specifically notes that a trial judge can only control the scope of rebuttal within limits, namely to refuse cumulative, repetitive or irrelevant evidence. *Id.* As stated in Wigmore on Evidence, presentation of rebuttal evidence is a matter of right and denial of that right is an error of law which is reviewed de novo. *Flowers v. Green*, 420 Pa. 481, 484, 218 A.2d 219, 220 (1966)(citing Wigmore on Evidence (2d) Ed., Vol 4, p. 20, s 1873). There is a vast difference between the order in which evidence is received and the preclusion of rebuttal evidence which is why different standards of review are applied. The reason is that the order in which evidence is received effects a trial differently than foreclosing a party from bringing evidence.

Further, much of the case law cited in the Appellees' Brief supports Mr. Angiuoni's argument that the 30/30 test should have been admitted at trial as rebuttal evidence. For instance, in *United States v. Laboy*, 909 F.2d 581 (1st Cir. 1990), the appellate court upheld the trial judge's decision *to allow* rebuttal testimony because "[t]he testimonies of both witnesses contradicted that of the

4

defendant." *Id*. at 588. That is precisely the argument here whereas the subsequent test would have shown that the 0/30 test was unreliable and not credible. Indeed, the rebuttal evidence would have likely rendered the 0/30 test as laughable and may have cast doubt on the Appellees' entire case. *Miller v. Thayer Corp*., No. 2:10-CV-307-JAW, 2011 WL 3624515 (D.Me. Aug. 17, 2011) (unpublished), involved a litigant's attempt to add an unidentified expert witness after the time for designating experts had passed. *Id*. Clearly, this was improper as the court noted that the plaintiffs were seeking permission for a "last-minute addition of opinion evidence that is normally disclosed to an opponent well before the close of discovery." *Id*. at *2 (noting that the plaintiffs were not seeking to merely present rebuttal evidence which can be done without advanced notice). No such occurrence happened here. Indeed, Mr. Angiuoni was not allowed to present any evidence to counteract or repel the damning 0/30 rifle range test. No trial judge should have allowed that to happen. In *LiCausi*, the trial court's decision to allow a rebuttal witness was deemed correct by the First Circuit because the "[rebuttal witness's] testimony, while not directly contradicting the testimony of [the defendant's] alibi witnesses, certainly tended to disprove or refute their testimony by undermining its credibility." *United States v. LiCausi*, 167 F.3d 36, 52 (1st Cir. 1999). This case supports Mr. Angiuoni's argument that the 30/30 test would have disproven the

suspicious 0/30 test. Discretion does not give the trial court authority to cast aside pertinent evidence that directly rebuts the Appellees' evidence.

The Appellees have disingenuously argued that "a party may present rebuttal evidence as a matter of right if necessary to refute new and unanticipated theories and/or facts at trial…[and Angiuoni's] failure to qualify was not a new fact or theory." (Appellee's Brief, p. 25, n. 16). Appellees gloss over the fact that the Defendant, Chief Rosa, was the first person to testify about Appellant Angiuoni's abysmal failure at the rifle range. Chief Rosa would have no knowledge of the subsequent 30/30 test and therefore, could not testify as to the subsequent 30/30 test. Understandably, Appellant Angiuoni, who took the stand for the first time after Chief Rosa's testimony, was the appropriate witness to attempt to introduce the subsequent rifle range test and rebut the remarkably poor score on the rifle range test. This is textbook rebuttal testimony whereas "[r]ebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Allen v. Dairy Farmers of America*, No. 5:09-CV-230, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013)(unpublished)(citation omitted); *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974); *United States v. Laboy*, 909 F.2d 581, 588 (1st Cir. 1990). Moreover, this testimony was attempted to be introduced during Mr. Angiuoni's case in chief.

6

The Appellees not only fail to grasp the applicable law here, but also attempt to downplay the importance of the subsequent test in which Mr. Angiuoni hit each and every shot within 30 feet - a complete 180-degree turnaround from the prior test.  In an attempt to mock the precluded evidence, the Appellees unimaginably claim the excluded test "did not 'rebut' anything…". (Appellees' Brief, p. 25). This is pure nonsense.  The subsequent test would have discredited a major piece of the Appellees' evidence. It would have also discredited several of the Appellees' witnesses. Many of the jurors could have easily found the entire Defendants' case suspicious whereas a critical piece of evidence could be construed as manipulated and manufactured by the Defendants. As it is with credibility, the jury may have found the entire defense as absurd whereas an accomplished war veteran was accused of missing all 30 shots from a distance the size of a small backyard. Indeed, even an eight-year old child could throw one strike from 30 feet.  The Defendants introduced shocking evidence that Mr. Angiuoni, an accomplished war veteran, could not make one shot from 30 feet. This evidence should have never gone unrebutted. Mr. Angiuoni was a gunner in the military and is a skilled marksman. (Appendix ("A.") A. 188). A skilled marksman does not miss 30 shots in a row from a distance that little leaguers throw from.  This 30/30 test was critical

7

evidence that would have rebutted the claim that the Appellant was an amateurish marksman and substantiated his claim that the rifle had malfunctioned.[1]

Additionally, the Appellees attempt to downplay the value of this critical test, despite the repeated mantra that the Appellant missed every shot at the rifle range during the trial.  The Appellees then argue that the rifle range test was not critical or significant to the case because the rifle is not something Mr. Angiuoni had to carry as an officer and could be retrained. (Appellees' Brief, p. 26). According to this logic, the entire case was infested with irrelevant testimony because much of the Appellees' case and closing argument centered on the failed rifle range test. This admission by the Appellees is an acknowledgment that irrelevant, inflammatory testimony permeated the trial, and this alone constitutes the basis for a reversal. Just as important, fairness requires that that the 0/30 test be disproven and/or repelled by the 30/30 test at a later date.

After attacking and diminishing the relevancy of their own evidence, the Appellees then attack Joseph Angiouni- an accomplished war veteran. Specifically, Mr. Angiuoni purportedly "blames" others and that the poor score was a product of his "imagination." (Appellees' Brief, pp. 27, 29).  The Appellees

---

[1] Indeed, Mr. Angiuoni would be willing to retake this test in front of any appellate panel. He is overwhelmingly confident that he would shoot his usually good score and is even more confident that he will not miss all thirty shots. Moreover, if he makes good on his offer the case should be reversed. Would the Appellees be willing to take such a chance?

utilize the speculative and self-serving testimony of Defendant Chief Rosa who inexplicably claimed that others used the same rifle as Appellant Angiuoni even though he did not oversee the rifle range test nor was he present for this particular test. (Appellees' Brief, p. 28; Appellee's Supplemental Appendix ("S.A.") S.A. 118). This notion is mere speculation on the part of Appellees and has absolutely no weight here. Appellant Angiuoni simply wished to disprove and dispel the Appellees' argument that the Appellant was not a skilled marksman. Obviously, Mr. Angiuoni believed there was something wrong with this test and he had the right to bring forth evidence to rebut evidence introduced by the Defendants.

The jury may have believed that the 0/30 test was a rigged test and this would have discounted the majority of the Appellees' arguments, including, the Appellees' argument that Mr. Angiuoni also mishandled a handgun during testing. The introduction of the 30/30 test would have created great disbelief and skepticism regarding the entire defense of the Appellees. Moreover, it would have countered Appellees' argument that Mr. Angiuoni was somehow a danger as a police officer. The striking testimony regarding Mr. Angiuoni's purported inability to handle firearms would have been greatly discounted and much of the Appellees' defense would have been reduced to Mr. Angiuoni's supposed penchant for commenting on headstones and refusing to take pictures with teenage girls in

9

possession of stolen property. Without the evidence admitted regarding the firearms testing, the strength of the Appellees' case would have greatly diminished.

Assuming arguendo that the abuse of discretion standard applies, a reversal would still be required here. The abuse of discretion standard does not allow a party to introduce crucial evidence and then allow that evidence to go unrebutted. If that were the case, most cases could proceed on an ex parte basis. The two parties here have a right to present their theories of the case. The Defendants argued that Mr. Angiuoni was incompetent. The coup de grace of this incompetence is Appellant's purported abysmal failure at the rifle range. The Appellant's subsequent test, in which he shot 30 for 30, may have been his critical piece of evidence to support his claim that he was unfairly treated and terminated by the Defendants. A judge does not have discretion to allow in a central piece of evidence from one party and disallow a central piece of evidence from the opposing party - especially where that evidence rebuts the Defendants' wild claim that Mr. Angiuoni cannot hit a target within 30 feet in front of him.

The failure to admit the subsequent test is reversible error under any legal standard - that is, the trial court's refusal to admit the 30/30 test was an abuse of discretion because a court has no discretion to deny a party its inherent right to counter and/or repel evidence submitted by the other side. Further, the plain error test would be no refuge for the Appellees because the inability to refute critical

evidence would constitute reversible error as it affects a party's substantial right to rebuttal. Plain error is established when there is an error that is plain and that error affects the substantial rights of a litigant. *United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004). A litigant as a matter of right, and consequently a substantial right, has the opportunity to rebut the evidence introduced at trial by the other side. The failure to permit rebuttal evidence here clearly affected the fairness and integrity of this proceeding. The incessant testimony about the failed rifle test permeated the trial and was a key final argument in the Appellees' closing. The trial court neutered any effective counter to this highly significant argument that went unrebutted by the Appellant. It allowed the jury to decide this matter under the false belief that Mr. Angiuoni is completely inept with a rifle which is certainly not the case as evidenced by the 30/30 test a few weeks after the improbable 0/30 test. As a matter of law, the evidence of the subsequent test should have been admitted and the failure to admit this critical rebuttal evidence is reversible error.

**II.    The Court Had a Duty to Sequester the Fact Witnesses Called by the Appellees. Despite the Appellees' Claims, a Court Does Not Have Discretion to Allow Fact Witnesses to Remain in the Courtroom. The Failure to Sequester Witnesses Affected the Fairness and Integrity of the Trial and a Reversal Is Required as a Matter of Law.**

The sequestration of witnesses is now mandatory. The Appellees do not deny this certain legal precedent. Instead, they dispute that the Appellant's counsel

made a proper request to sequester fact witnesses. (Appellees' Brief, pp. 29-32). A request can be made verbally and the statute does not provide any specific manner to make this request. *See* Fed. R. Evid. 615. If a formal motion was required to invoke Fed. R. Evid. 615, the rule would specifically state the requirement. This is evidenced by Fed. R. Evid. 706 and Fed. R. Evid. 412(c) which specifically state the relief sought be brought by motion – language which is clearly missing from Fed. R. Evid. 615.  The record shows Appellant's counsel showed concern that witnesses were present and not sequestered. (A. 151). The record also shows that the judge in the lower court understood the request and expressly denied it because no written motion was made. (A. 151). This is patently improper as the sequestration rule does not require a written motion, but rather is mandatory at the request of a party.[2]

The trial court, pursuant to the mandatory nature of Fed. R. Evid. 615, had a duty to then sequester all fact witnesses. Instead, the trial court knowingly allowed a tainted trial to proceed. Even if the abuse of discretion standard applied, a court has no discretion to permit fact witnesses to remain in a courtroom. The law overwhelmingly holds that upon the codification of Fed. R. Evid. 615 in 1974,

---

[2] Appellees requested a directed verdict without a formal written motion at the close of the Appellant's case in chief and the court entertained that oral/verbal motion as is reflected in the Record. (S.A. 296). The court did not require that the request for a directed verdict be filed via a written motion.

12

"[t]he rule makes the exclusion of witnesses a matter of right and the decision is no longer committed to the court's discretion as it once was." *United States v. Ell*, 718 F.2d 291, 292 (9th Cir. 1983)(citing Fed. R. Evid. 615 advisory committee note).  The cases cited by the Appellees *are entirely irrelevant*. Those cases involve investigative agents who were permitted to remain on the prosecution's table as is allowed by law because investigative agents fall under one of the exceptions to Fed. R. Evid. 615.  The Court in *United States v. Seschillie*, 310 F.3d 1208 (9th Cir. 2002) succinctly explains the standards that apply to Fed. R. Evid. 615 stating,

> A different standard applies when a party requests an exclusion and a district court fails to exclude a witness under Rule 615 if no exception applies. Because Rule 615 states that the court, at the request of a party, *shall* order witnesses excluded, "[t]he rule makes the exclusion a matter of right and the decision is no longer committed to the court's discretion as it once was." *United States v. Brewer*, 947 F.2d 404 (9th Cir. 1991)(request for witness exclusion denied because trial court believed, improperly, that Rule 615 did not apply during a pretrial motion – no Rule 615 exception even arguably applied); *United States v. Ell*, 718 F.2d 291, 293-4 (9th Cir. 1983)(trial judge improperly denied motion to sequester witness who had already testified in case-in-chief but would later testify in rebuttal – no Rule 615 exception even arguably applied). While the court is stripped of discretion and must order sequestration if a party so requests and no Rule 615 exception applies, the decision as to *whether* a Rule 615 exception applies is reviewed for abuse of discretion.

13

*United States v. Seschillie*, 310 F.3d 1208, n.3 (9th Cir. 2002)(citations omitted); *see* Fed. R. Evid. 615 advisory committee note (stating that investigatory agents are an exception to the rule of exclusion). The cases cited by the Appellees are not helpful here, and are a distraction that the majority of the Appellees' *fact* witnesses were privy to courtroom testimony. This eviscerated any semblance of a fair trial.

Again, the law holds the sequestration of witnesses pursuant to Fed. R. Evid. 615 is now mandatory in nature and the failure to sequester witnesses requires a reversal. *United States v. Warren*, 550 F.2d 219, 227 (5th Cir. 1977); *see also United States v. Magana*, 127 F.3d 1, 5 (1st Cir. 1997)(stating that "Rule 615 now requires the court, upon a party's request, to 'order witnesses excluded so that they cannot hear the testimony of other witnesses.'"); *United States v. Burgess*, 691 F.2d 1146, 1157 (4th Cir. 1982)(stating "F.R.Evid. 615 automatically mandates reversal whenever noncompliance with the rule is shown").  Indeed, it has also been held "when a court fails to comply with Rule 615, prejudice is presumed and reversal is required unless it is manifestly clear from the record that the error was harmless or unless the prosecution proves harmless error by a preponderance of the evidence." *United States v. Seschillie*, 310 F.3d 1208, 1216 (9th Cir. 2002) (citation omitted). This is because "[i]t may be impossible to tell how a witness' testimony would have differed had the defendant's motion to exclude been granted." *Id*. Thus, this bedrock rule was clearly violated and a reversal is required here.

14

Additionally, the plain error standard would not prevent a reversal here because the integrity and fairness of the proceeding was compromised. Plain error occurs when there was an error and that plain error affected the substantial right of a litigant and the fairness and integrity of the trial. *United States v. Brown*, 548 F.2d 1194, 1207 (5th Cir. 1977); *United States v. Garvey*, 688 F.3d 881, 884 (7th Cir. 2012). The trial court's refusal to sequester fact witnesses destroyed any chance of an effective cross-examination which is a constitutional and substantial right, and artificially bolstered the strength of the witnesses presented by the Appellees by allowing fact witnesses to remain in the courtroom. Allowing fact witnesses to remain in the courtroom amplified the strength of the Appellees' direct examination of witnesses whereas they could mimic and aid in each other's testimony. Further, Appellant's counsel could not engage in any meaningful cross-examination of the Appellees' witnesses because they could anticipate any future questions by their presence in the courtroom. As has been forcefully stated, "[s]equestration helps to smoke out lying witnesses: 'It is now well recognized that sequestering witnesses "is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice"' . . . (citing 6 *Wigmore on Evidence* § 1828, at 463)." *United States v. Rhynes*, 218 F.3d 310, 317-318 (4th Cir. 2000). The Appellees had an unfair advantage on direct examination, and the constitutional right of cross-examination was violated

15

whereas cross-examination was defanged and rendered useless by the trial court's refusal to sequester fact witnesses.

A reversal is required under *any* legal standard because sequestering fact witnesses protects the integrity and fairness of a trial. This proceeding was a mockery and the verdict the product of an unfair trial that unfairly favored the Appellees.

III.   **The Appellees Brought Forth the Highly Prejudicial and Irrelevant Evidence That the Billerica Police Department Employed Many Veterans. This Evidence Had Little or No Probative Value and Greatly Prejudiced Appellant Angiuoni's USERRA Claims. As a Matter of Law, the Admission of This Irrelevant and Highly Prejudicial Evidence Was Reversible Error.**

The veterans issue was preserved by the motion in limine denied by the trial court. "The real purpose of a Motion in Limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) (unpublished). "Motions in limine 'avoid the obviously futile attempt to "unring the bell"' once the evidence has been presented before the jury." *Pinal Creek Grp. v. Newmont Min. Corp.*, No. CV-91-1764-PHX-DAE, 2006 WL 1766494, at *1 (D. Ariz. June 26, 2006) (unpublished). Moreover, courts look to the context of a ruling on a motion in limine to determine whether it is definitive. *Richardson v.*

16

*Missouri Pacific R. Co*., 186 F.3d 1273 (10th Cir. 1999)(holding that ruling was definitive because the issue was straightforward and facts were fairly certain and unlikely to change); *Crowe v. Bolduc*, 334 F.3d 124 (1st Cir. 2003)(applying abuse of discretion standard where judge's ruling on motion in limine was stated to be open to a renewed objection but when read in context was ambiguous); *Rodriguez v. Senor Frog del la Isla, Inc*., 642 F.3d 28, 35 (1st Cir. 2011)(stating that pretrial ruling excluding evidence unless circumstances changed at trial was final enough to apply abuse of discretion standard).

It was the Appellees, in their opening statement, that immediately proclaimed that "in fact, that out of roughly at the time 60 members of the force, almost half of them were veterans." (A. 149). Thus, the Appellees exposed the jury to this highly prejudicial and irrelevant evidence from the outset of the trial. As any legal practitioner knows, it is highly disfavored to object to an opening statement and this will often only hurt the objecting party by highlighting this highly prejudicial and irrelevant evidence. Thus, the veterans issue was exposed to the jury immediately by Appellees and it was impossible to preclude this testimony from trial. As a result, the motion in limine was, for all intents and purposes, final and preserved for appellate review.

Appellant's counsel never referred or asked how many veterans were on the force. A passing question as to whether Officer Moran was a veteran does not open

the door to introduce evidence as to the numbers of veterans on the force. (S.A. 19). Again, the Appellees pushed this highly prejudicial and irrelevant testimony at the trial which began as early as the opening statement by the Appellees. (A. 149).

The existence of veterans on the Billerica Police Department does not prove or disprove Mr. Angiuoni's USERRA claim or the Appellees' defense. In a gender bias case would all the company's female employees be referred to as relevant evidence to the claim at hand? Of course not. Courts have routinely rejected this defense or evidence. The use of references to veterans on the force detracted from the actual issues that were tried. Additionally, the composition of the police force does not disprove a claim. If this were the case, then this case could have been disposed on a motion to dismiss. Indeed, most discriminatory claims could be dismissed if Defendants were permitted to employ such a sophomoric defense. An employer could always push out a member from the protected class and argue no discrimination took place here. According to this logic, Archie Bunker could not be a misogynist because he had a wife and daughter.

Appellees' sole defense to the Appellant's claims is that he was purportedly fired for cause. Appellees confused this issue by twisting their defense into the irrelevant argument that the Town had numerous veterans on the force and therefore the Appellees were not liable under USERRA. This argument is illogical and cannot be the basis for this erroneous ruling to stand. The anti-military animus

18

of Officer Moran is not precluded because of the composition of the police force. Again, the innumerable references to veterans on the Billerica Police Department was extraordinarily prejudicial and had no relevance here. As a matter of law, its exclusion was required. The Appellees argument is meritless, and a trumped up excuse to substantiate an erroneous ruling which precluded Appellant Angiuoni from receiving a fair trial. The numerous references to veterans on the force detracted from the case and served as an illicit de facto affirmative defense that had no place at this trial.

The Appellees further claim that the evidence of veterans on the force was part of their defense. In support of this theory, the Appellees cite three cases. These cases do not support this notion in any manner.  For instance, *Burroughs v. Department of Army*, 254 Fed.Appx. 814 (Fed. Cir. 2007), involved a USERRA claim but did not address inflammatory evidence nor does it stand for the proposition that the entire number of veterans employed by a Defendant is admissible evidence at trial.  In another instance, *Becker v. Department of Veteran Affairs*, 414 Fed.Appx. 274 (Fed. Cir. 2011), explained "the evidence showed that Mr. Becker lacked the specialized experience required by the position." *Id*. at 277. In *Sheehan v. Dep't of Navy*, 240 F.3d 1009 (Fed. Cir. 2001), in an administrative proceeding, the Board reviewed similarly situated job applicants with military experience as a factor, among several others, to determine whether there was

19

discrimination based on military status in the hiring process for a position.  This case also does not hold that the number of veterans employed by an employer is relevant evidence at a trial. The aforementioned cases have no bearing as to the admission of all these numerous references to veterans admitted in Appellant Angiuoni's trial.

Indeed, the Courts have admonished such evidence as inflammatory and confusing to a jury. The Appellees cite irrelevant cases to support their irrational claim that the presence of veterans on the force somehow defeats the Appellant's claim. This evidence was a rouse and an effective, albeit with no legal basis, tactic to detract the jury from the actual issue at hand—that is, whether Appellant Angiuoni suffered discrimination due to his veteran status. Instead, the number of veterans assured the jury all was well whereas this was not an issue for the jury. This issue was surely preserved whereby the trial court denied a motion to exclude the number of veterans references at trial. A party is not required to regurgitate an additional objection or set forth an offer of proof to preserve this issue.

As explained, the Appellees provided not a scintilla of case law which stands for the admission of numerous veterans references by a defendant in the defense of a USERRA claim. This meritless argument was accepted by the trial court, and then this highly inflammatory evidence was introduced by the Appellees in their opening.  This low probative value, highly inflammatory evidence should not have

been admitted into evidence under any legal standard.[3]  The federal courts have explained that a trial judge has wide latitude in making Fed. R. Evid. 403 decisions, "[b]ut this latitude isn't unlimited." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). The courts have further explained "[w]here the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *Id*.  The mere reference to the number of veterans at trial was clearly prejudicial and should have been denied immediately as a matter of law. This highly inflammatory evidence would also be reversed under the plain error standard where the federal courts have held that highly prejudicial evidence admitted at trial, even if the party fails to object, can amount to plain error. *United States v. Brown*, 548 F.2d 1194, 1207 (5th Cir. 1997). As a result, the avalanche of references to the number of veterans on the force constitutes reversible error under either the abuse of discretion or plain error standard. A reversal is required here.

---

[3] Appellant still contends that this evidence had no probative value.

We respectfully request, as was asserted in the Appellant's Opening Brief, that this Honorable Court afford Joe Angiuoni a new trial.

Respectfully submitted,

John V. Siskopoulos (No. 1171443)
Siskopoulos Law Firm, LLP
198 Tremont Street, #320
Boston, MA 02116
(617) 959-1628
jvs@siskolaw.com

Alexandra Siskopoulos (No. 1171444)
Siskopoulos Law Firm, LLP
33 West 19th Street, 4th Floor
New York, NY 10011
(646) 942-1798
acs@siskolegal.com

Attorneys for Plaintiff-Appellant

March 11, 2016

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,373 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

John V. Siskopoulos (No. 1171443)
Siskopoulos Law Firm, LLP
198 Tremont Street, #320
Boston, MA 02116
(617) 959-1628
jvs@siskolaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2016, I electronically filed the foregoing Appellant's Reply Brief with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Leonard H. Kesten
Gregor A. Pagnini
Deidre Brennan Regan
Jeremy Silverfine
Brody Hardoon Perkins & Kesten LLP
699 Boylston Street, 12th Floor
Boston, MA 02116


John V. Siskopoulos (No. 1171443)
Siskopoulos Law Firm, LLP
198 Tremont Street, #320
Boston, MA 02116
(617) 959-1628
jvs@siskolaw.com

March 11, 2016